1   Daniel J. McLoon (State Bar No. 109598)
    djmcloon@jonesday.com
2   Suzanne Cate Jones (State Bar No. 157496)
    scjones@jonesday.com
3   Lisa C. McCurdy (State Bar No. 228755)
    lcmccurdy@jonesday.com
4   JONES DAY
    555 South Flower Street
5   Fiftieth Floor
    Los Angeles, CA  90071-2300
6   Telephone:    (213) 489-3939
    Facsimile:    (213) 243-2539
7
    Attorneys for Defendant
8   EXPERIAN INFORMATION SOLUTIONS, INC.

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14   EUNICE M. HARMS and GLENN            Case No. C 07-00697 (JF)
     WATANABE, individually and on behalf of
15   all others similarly situated,        Assigned for all purposes to the Honorable
                                           Jeremy Fogel
16             Plaintiffs,

17         v.                             DECLARATION OF LISA C. McCURDY
                                          IN SUPPORT OF DEFENDANT
18   EXPERIAN INFORMATION SOLUTIONS,      EXPERIAN INFORMATION SOLUTIONS,
     INC. and DOES 1-10,                  INC.'S RESPONSE TO PLAINTIFFS'
19                                        NOTICE OF PREVIOUSLY DISMISSED
               Defendants.                ACTION AND MOTION TO TRANSFER
20                                        VENUE PURSUANT TO 28 U.S.C.
                                          § 1404(a)
21

22

23

24

25

26

27

28

1    I, Lisa C. McCurdy, hereby state and declare as follows:

2    1.    I am an attorney duly licensed to practice in the State of California. I am an

3    associate at the law firm of Jones Day, counsel of record for Defendant Experian Information

4    Solutions, Inc. ("Experian") in the matter entitled *Eunice M. Harms and Glenn Watanabe v.*

5    *Experian Information Solutions, Inc.*, United States District Court for the Northern District of

6    California Case No. C 07-00697 (JF) (the "Harms Class Action"). I was also counsel of record

7    for Experian in the matter entitled *Laurence Stearn v. Experian Information Solutions, Inc.*,

8    United States District Court for the Central District of California Case No. CV06-2249 PA (SHx)

9    ("Stearn Class Action"). I make this declaration in support of Defendant Experian's Response To

10   Plaintiffs' Notice Of Previously Dismissed Action And Motion To Transfer Venue Pursuant To

11   28 U.S.C. § 1404(A).

12   2.    I have personal knowledge of the facts set forth in this declaration and, if called as

13   a witness, I could and would competently testify to the facts stated in this declaration.

14   3.    Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Joint Rule 26(f)

15   Scheduling Report filed by the parties in the Stearn Class Action.

16   4.    Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the "Reporter's

17   Transcript of Proceedings from July 17, 2006 Scheduling Conference" in the Stearn Class Action.

18   5.    Attached hereto as <u>Exhibit 3</u> are true and correct copies of the declarations filed by

19   plaintiffs' counsel following Judge Anderson's July 17, 2006 ruling striking plaintiff's class

20   action allegations in the Stearn Class Action.

21   6.    Attached hereto as <u>Exhibit 4</u> is a true and correct copy of Experian's "Opposition

22   to Plaintiff's Motion for Relief from Court's Order Striking Plaintiff's Class Action Allegations"

23   filed in the Stearn Class Action.

24   7.    Pursuant to the Northern District of California, San Jose Division, Standing Order,

25   Experian conferred with opposing counsel regarding the date on which this matter will be heard.

26   Opposing counsel selected a date of May 4, 2007, which was not available with the Court. As an

27   alternative, the hearing has been set for May 11, 2007, the same date on which the parties Early

28   Case Management Conference was set previously by the Court.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed this _____ day of April 2007, at Los Angeles, California.

3

4

5    _____

6                    Lisa C. McCurdy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"EXHIBIT 1"

1  Daniel I. Barness (SBN 104203)
   dbarness@smbhblaw.com
2  Ira Spiro (SBN 67641)
   ispiro@smbhblaw.com
3  J. Mark Moore (SBN 180473)
   mmoore@smbhblaw.com
4  SPIRO MOSS BARNESS HARRISON & BARGE LLP
   11377 W. Olympic Blvd., Fifth Floor
5  Los Angeles, California 90064
   Tel:   (310) 235-2468
6  Fax:  (310) 235-2456

7  Attorneys for Plaintiff LAURENCE STEARN

8  Daniel J. McLoon (State Bar No. 109598)
   djmcloon@jonesday.com
9  Suzanne Cate Jones (State Bar No. 157496)
   scjones@jonesday.com
10 Lisa C. McCurdy (State Bar No. 228755)
   lcmccurdy@jonesday.com
11 JONES DAY
   555 South Flower Street
12 Fiftieth Floor
   Los Angeles, CA  90071-2300
13 Telephone:  (213) 489-3939
   Facsimile:  (213) 243-2539
14
   Attorneys for Defendant EXPERIAN INFORMATION
15 SOLUTIONS, INC.

16              UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18                    WESTERN DIVISION

19

| 20 | LAURENCE STEARN, individually and on behalf of all employees similarly situated, | Case No. CV06-2249 PA (SHx) |
|----|----|----|
| 21 | | **CLASS ACTION** |
| 22 | Plaintiffs, | **JOINT RULE 26(F) SCHEDULING CONFERENCE REPORT** |
| 23 | v. | |
| 24 | EXPERIAN INFORMATION SOLUTIONS, INC., and DOES 1-10, | **SCHEDULING CONFERENCE** |
| 25 | | Date:     July 17, 2006 |
| 26 | Defendants. | Time:     10:30 a.m. |
| 27 | | Ctrm:     15 |
| 28 | | |

LAI-2250073v2

1    Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, counsel for

2   Plaintiff Laurence Stearn ("Plaintiff") and Defendant Experian Information

3   Solutions, Inc. ("Experian") met in person on June 19, 2006 and June 28, 2006 to

4   discuss the matters set forth in Rule 16, Rule 26(f), Local Rule 26-1, and the

5   Court's June 7, 2006 Order Scheduling Meeting of Counsel and Scheduling

6   Conference.  The parties hereby submit their Joint Scheduling Conference Report

7   as follows:

8        1.    **<u>Short synopsis of principal issues in case</u>:**

9              (a)    **<u>Plaintiff's Case Synopsis</u>:**

10   At present, Plaintiff believes the principal issues include the following:  (1)

11   whether a class should be certified under the standards applicable to class actions

12   pursuant to F.R.Civ.Proc. Rule 23; (2) whether the information on Plaintiff's

13   Experian credit report regarding his home equity line of credit was misleading,

14   inaccurate, false or inconsistent with the "maximum possible accuracy" standard

15   applicable to such reports; (3) whether Experian describes home equity lines of

16   credit on other consumers' reports in the same allegedly misleading and inaccurate

17   fashion; (4) whether Experian willfully failed to follow reasonable procedures to

18   ensure maximum possible accuracy of the information on consumers' credit

19   reports; (5) whether Experian negligently failed to follow reasonable procedures to

20   ensure maximum possible accuracy of the information on consumers' credit

21   reports; (6) whether Plaintiff and class members are entitled to an award of

22   statutory damages, in the amount of $100-1,000 per violation; (7) whether Plaintiff

23   and class members are entitled to an award of actual damages; (8) whether Plaintiff

24   and class members are entitled to punitive damages; (9) the merits of the defenses

25   and affirmative defenses Experian has raised or may raise.

26   Before proceeding further, Plaintiff notes that he initially included solely the

27   above list of principal issues in this section when he provided his draft of the Joint

28   Report to defense counsel for their review, comments and supplementation.

LAI-2250073v2

1   Plaintiff's counsel subsequently received Experian's argumentative "case synopsis"

2   (set out below) and objected to it, but were informed that Experian customarily

3   includes such sections, that Experian intended to file it despite Plaintiff's

4   objections, and that Plaintiff was free to provide the Court with a similar "synopsis

5   of the case." While Plaintiff would have preferred a more objective synopsis of the

6   issues, Plaintiff has now included additional comments concerning his own views

7   of the case to level the playing field.

8       Plaintiff Stearn, who is a loan broker, complained to Experian of the

9   misleading information relating to his home equity line of credit ("HELOC") after

10   he learned, from a third party, that his Experian consumer report contained an

11   inordinately large amount of "revolving debt." The inaccurately high portion of his

12   revolving debt consisted of his Citibank HELOC, which Experian failed to identify

13   on Plaintiff's report as a HELOC or real property-secured debt. In responding to

14   Plaintiff's complaint, Experian informed Plaintiff in substance that the challenged

15   information was accurate, that it was reported according to Experian's regular

16   practice, and that Experian would not remedy its practice. This lawsuit followed.

17       Plaintiff contends that Experian has systematically violated section 1681e(b)

18   of the FCRA by failing to properly identify home equity lines of credit

19   ("HELOCs") as debt secured by real property on consumer reports, including

20   Plaintiff's consumer report. The statutory section at issue, Section 1681e(b), states

21   that "[w]henever a consumer reporting agency prepares a consumer report it shall

22   follow reasonable procedures to assure ***maximum possible accuracy*** of the

23   information concerning the individual about whom the report relates. (Emphasis

24   added.) Case law makes clear that the Fair Credit Reporting Act is to be liberally

25   construed [Citation omitted.]

26       As alleged, Experian violates Section 1681e(b) by failing to identify

27   HELOCs as HELOCS, or at least as debt secured by real property, on the consumer

28   reports it prepares for consumers with HELOCs. Instead, Plaintiff alleges that

LAI-2250073v2

1   Experian identifies them as revolving debt, or similar designations, which indicate

2   unsecured debt.  Indeed, the reports contain a separate section for debt secured by

3   real property, but Experian fails to put the HELOCs in that section.  Because it does

4   so systematically, Plaintiff contends that Experian fails to follow reasonable

5   procedures to ensure the maximum possible accuracy of the information pertaining

6   to HELOCs.  (Notably, Plaintiff is informed that Experian's two primary

7   competitors, Equifax and Trans Union, get it right – they identify HELOCs as

8   HELOCs, or at least as debt secured by real property, on their consumer reports.)

9       Plaintiff's Complaint contains claims for both willful and negligent

10  violations of 15 U.S.C. § 1681e(b).  In order to prove liability, Plaintiff need only

11  show that Experian included inaccurate information in his consumer report.  Once

12  he does so, Experian can escape liability if it establishes that the inaccurate report

13  was generated despite its following reasonable procedures.  [Citation omitted.]  If,

14  however, the agency cannot make that showing, the question – for purposes of the

15  consumer's potential recovery for the violation -- becomes whether its failure was

16  willful or negligent.  Here, while Plaintiff has alleged both claims, Plaintiff

17  believes the evidence will demonstrate willfulness, entitling Plaintiff and the class

18  to recovery of statutory damages.[1]

19

20

21  [1] Pursuant to section 1681n of the FCRA, any person who willfully fails to
    comply with section 1681e(b) with respect to a consumer is liable to that consumer

22  in an amount equal to the sum of any actual damages sustained by the consumer as
    a result of the failure *or damages of not less than $100 and not more than $1,000;*

23  such amount of punitive damages as the court may allow; and in the case of any

24  successful action to enforce liability, the costs of the action together with
    reasonable attorney's fees as determined by the court.  In the case of negligent

25  noncompliance (which Plaintiff has pleaded as an alternative claim, although

26  Plaintiff is confident the evidence will prove Experian's willful noncompliance), a
    consumer can recover actual damages and attorneys' fees.  Thus, if willful

27  noncompliance with section 1681e(b) is shown, Plaintiff can recover statutory

28  damages in lieu of seeking or proving actual damages

LAI-2250073v2

-- 3 --

As a result of Experian's reporting, a lender or credit issuer that reviews an Experian consumer report will not know that certain "revolving debt" on the Experian report – namely HELOCs -- is secured by real property, but rather is led to believe that it is *unsecured* revolving debt, such as credit card debt, and to classify the debt as unsecured in analyzing the consumer's overall credit picture. Thus, someone with a $200,000 HELOC will falsely appear to have $200,000 of unsecured revolving debt, on Experian's consumer reports. For this reason, Experian's contention that HELOCs are "a form of" revolving credit is beside the point. Whether or not HELOCs are a form of revolving debt, Experian's reporting of them is inaccurate, misleading, and inconsistent with the purpose of the FCRA and its compliance duties under section 1681e(b). Experian knows, or at least recklessly disregards, that its practice pertaining to the reporting of HELOCs is unfair to consumers and is not consistent with assuring maximum possible accuracy, will or is likely to negatively impact consumers' credit reputations, and will in many instances lead to higher interest rates for consumers and other financial harm.[2]

In its "Synopsis of the Case," Experian also argues that Plaintiff will be unable to satisfy the requirements for class certification, and identifies purported issues, including class members' damages, which allegedly are individualized and will prevent a finding of predominance. Experian's arguments are premature. However, Plaintiff notes that another district court rejected similar "predominance" and "unmanageability" arguments in certifying a nationwide class action against

---

[2] As an example, most credit card issuers now include terms in their agreements that allow them to increase cardholders' interest rates based on changes in the cardholders' creditworthiness and debt levels. A cardholder who borrows $100,000 in a secured HELOC but whose HELOC is identified merely as unsecured "revolving debt" (e.g., unsecured credit card debt) on his Experian consumer report may be subjected to increases in his interest rate, pursuant to these terms in his credit card agreement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Experian involving alleged violations of 15 USC § 1681e(b), based on its alleged inaccurate reporting of information on class members' consumer reports.  [Citation omitted.] Common legal issues in this case, as in that case, include whether the information on class members' reports is misleading, whether Experian has a practice or policy of writing credit reports in this manner, and if so, whether its policy is reasonable.  [Citation omitted.]  Plaintiff also is confident that the evidence will demonstrate that Experian's violations were willful, permitting class-wide recovery of *statutory* damages without the need to consider issues relating to proof of actual damages.  That damages may be small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest statutory damages *without proof of injury*.  [Citation omitted.]

Rule 23(b)(3) is designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.  [Citation omitted.]  Plaintiff's counsel is represented by counsel who are very experienced in class actions and have served as class counsel in dozens of cases in state and federal court.  Plaintiff's claims are limited to federal claims, avoiding the complications that can plague nationwide class actions under state law.  [Citation omitted.]  In sum, despite Experian's present contentions, common issues will predominate, and there will be ways to identify the class, whether through databases, sampling or other methods common to class actions.

LAI-2250073v2

1      **(b) Defendant's Case Synopsis[3]:**

2          Experian is a national credit reporting agency.  Experian essentially functions

3  as a storehouse of credit information concerning hundreds of millions of consumers

4  nationwide, collecting and storing credit information originated by others.  Much of

5  the information stored by Experian in its computer database is supplied by

6  subscriber businesses who not only request information from Experian, but also

7  report information to Experian about their customers' credit worthiness.  Because

8  the subscriber businesses have a direct relationship with its consumers, Experian

9  relies on its subscribers to provide information about the subscribers' consumers,

10  including identifying information, type and amount of credit extended, and credit

11  performance.  Experian has no direct information about the nature and terms of the

12  underlying consumer debt that is reported to Experian.

13          The statistics surrounding credit information are staggering.  There are 2.6

14  billion trade lines in Experian's databases belonging to over 200 million consumers,

15  which have been reported by a minimum of 30,000 different sources.

16  _____

17      [3] Experian objects to plaintiff's "synopsis" section.  Among other things, plaintiff's "synopsis," a nearly five-page memorandum, includes a misleading

18  discussion of case law.  For example, plaintiff's incomplete discussion of class certification law regarding the FCRA warrants correction.  The FCRA has been on

19  the books for more than 35 years and almost every court that has considered a request to certify a class has denied it.  Experian will be providing a representative

20  sample of the scores of cases where courts have denied certification when this case

21  gets to the class certification stage.  Plaintiff suggests that a plaintiff is automatically awarded damages if he simply demonstrates that Experian included

22  inaccurate information on his consumer report and the credit reporting agency fails

23  to show the inaccurate report was generated because the agency failed to follow reasonable procedures.  However, plaintiff fails to acknowledge other important

24  elements that must be established, including, as a general rule, a showing that the

25  failure to follow reasonable procedures in preparing a consumer credit report caused an ascertainable injury. Experian recognizes that all of these matters will be

26  extensively briefed at a later stage of the case but believed it necessary, in light of

27  plaintiff's section above, to briefly clarify the record so that the court is not misled

28  by plaintiff's incomplete and misleading statements of law.

1   Approximately 50 million of these accounts are updated on a daily basis. Experian

2   provides the consumer credit information that it collects and stores to credit

3   grantors for credit-related transactions as authorized by the Fair Credit Reporting

4   Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* ("FCRA"). Experian does not generate

5   credit information itself, nor does it make loans, decide who should receive credit,

6   or set loan terms.

7          In this action, Plaintiff claims Experian negligently and/or willfully failed to

8   follow reasonable procedures under Section 1681e(b) of the FCRA, through

9   inaccurate reporting of his home equity line of credit. Specifically, Plaintiff Stearn,

10  a loan broker, alleges that Experian willfully and/or negligently reported his

11  Citibank home equity line of credit ("HELOC") as a revolving debt when (he

12  claims) it should have been reported as a debt secured by real property. Plaintiff

13  claims that, as a result, his credit reputation is inferior to what his credit would be if

14  the debt were reported as secured by real property. However, since HELOCs *are*

15  *indeed* a form of revolving credit, the reporting of a HELOC as revolving credit in a

16  consumer credit report would not be inaccurate. Moreover, Experian strenuously

17  disputes that Plaintiff Stearn has any reasonable basis to assert that reporting his

18  home equity line of credit as revolving debt is somehow detrimental to his credit

19  rating. Each individual consumer's credit file is unique. Each consumer's credit

20  score is the product of a highly complicated and proprietary set of formulas and

21  algorithms to which the many variables contained within each consumer's unique

22  credit file are applied. Plaintiff has no detailed first-hand knowledge of the many

23  different proprietary scoring models used by credit grantors, or of how the reporting

24  of his HELOC affects his score (if it affects it at all). Nor does he have a

25  reasonable basis for asserting that the impact on his credit score is typical or in any

26  way representative of how the reporting of home equity lines of credit debt would

27  impact the scores of millions of other consumers who have their own unique credit

28  files and variables to be applied to the proprietary formulas. These are the facts on

1   which plaintiff seeks actual, statutory and punitive damages from Experian for
2   alleged violations of the FCRA.

3        Plaintiff also seeks to certify a massive, nationwide class of allegedly
4   similarly situated individuals consisting of all consumers for whom Experian
5   reported home equity lines of credit as revolving debt or other debt not secured by
6   real property.  However, Plaintiff has not, and cannot, satisfy the stringent
7   requirements of Rule 23.  For example, questions of fact, including with respect to
8   Plaintiff's and each putative class member's credit file and credit history,
9   interactions with Experian, and damages, are not common and any arguably
10  common questions do not predominate over questions affecting only individual
11  members.

12       Moreover, there are insurmountable manageability problems.  To identify
13  potential class members, it would be necessary to determine — as to each potential
14  class member — whether his or her consumer credit report reported a home equity
15  line of credit as revolving debt but did not indicate the debt was a home equity line
16  of credit or secured by real property.  At a minimum that would require the analysis
17  of millions of consumer credit reports, a process that by its nature would be fraught
18  with error.  Moreover, *assuming arguendo* plaintiff's averments are correct and
19  Experian is reporting HELOCs as revolving debt with no indication anywhere in
20  the report that they are home equity lines of credit or secured by real property, there
21  would be no way to discern from the face of a consumer's credit report which
22  revolving debt being reported by Experian is actually a HELOC and not some other
23  type of revolving debt, and thus no way to discern which consumers might fall into
24  the putative class.  (Of course, to the extent Experian is reporting HELOCs in a
25  manner that indicates they are home equity lines of credit or that the debt is secured
26  by real property, such facts would undermine the entire premise for Plaintiff's
27  claims.)

28

LAI-2250073v2

- - 8 - -

2.      **Listing and proposed schedule of law and motion matters, and a proposed dispositive motion cut-off date:**

The parties agree that setting any dates other than the dates for the class certification proceedings is premature until after the Court has decided whether to certify a class in this action, as that decision will dramatically affect the scope and nature of the entire case.

**Class Certification.**  The parties propose that plaintiff file his motion for class certification on August 17, 2007.  The parties also have agreed that plaintiff's motion and brief in support of class certification, and defendant Experian's memorandum in opposition to certification, shall not exceed forty (40) pages in length.  Plaintiff's reply brief shall not exceed twenty-five (25) pages in length.

**Plaintiff's further position:**

The parties agree that in light of the complex and extensive discovery that likely will be involved in this case, as well as the unresolved class certification issue, it is premature to set a final dispositive motion cut-off date.  With that said, Plaintiff believes that the final dispositive motion cut-off date should be set for no earlier than nine months after the conclusion of the opt-out period, in the event class certification is granted, to allow sufficient time for the second phase of discovery which would pertain to dispositive and other motions and preparation for trial.

With respect to the possible dispositive motions Plaintiff may bring, Plaintiff anticipates filing a motion for class certification no later than August 17, 2007 (barring the need for additional time based on good cause), and perhaps earlier than that date.  Plaintiff may also file a motion to strike certain of Experian's affirmative defenses in the event Experian does not voluntarily remove certain of those alleged defenses from its Answer. (The parties are attempting to resolve the dispute over the affirmative defenses without the need for a motion, and are filing a separate stipulation to that effect.)  Plaintiff also anticipates bringing a motion(s) for summary judgment or partial summary judgment as to at least some of the issues

LAI-2250073v2

1   identified in Item No. 1 above, including but not limited to the question whether the

2   information relating to Plaintiff's home equity line of credit on his Experian

3   consumer report fails to satisfy the "maximum possible accuracy" standard required

4   under the Fair Credit Reporting Act.

5          Plaintiff strenuously disagrees with Experian's proposal, set forth below,

6   regarding disclosure and deposition of class certification affiants in June 2007, in

7   large part because in Plaintiff's counsel's experience, it is common to determine the

8   need for a particular affiant only when the certification briefs are being prepared,

9   which is when counsel's focus on the arguments and evidence needed for class

10  certification is more keen than it possibly can be before preparing the briefs.

11  Experian's proposal regarding timing would effectively shorten Plaintiff's time to

12  prepare the motion by two months, since Plaintiff would have to provide his

13  affidavits in support of his motion two months prior to filing the motion itself.  In

14  all likelihood, if the class certification deadline is August 17, 2007, Plaintiff will be

15  busy completing pre-certification discovery in June 2007, and his counsel will not

16  have begun drafting the motion at that time.  Relatedly, the proposal would require

17  Plaintiff's counsel to prepare and serve Plaintiff's supporting affidavits a month

18  before the end of the pre-certification discovery phase, which the parties presently

19  contemplate would end on July 17, 2007, as discussed in Item 3 below.  The last

20  month of the pre-certification discovery phase would thus be virtually worthless to

21  Plaintiff, but not to Experian, which, under its proposal, would not have to provide

22  its own affidavits until July 22, 2007, after the end of the first phase of discovery.

23  For these reasons, Experian's proposal, if adopted, would be unfair, one-sided, and

24  would prejudice Plaintiff, to Experian's advantage.  While Plaintiff believes it is

25  possible the parties may be able to agree to dates and a process that would permit

26  disclosure of affidavits prior to class certification, perhaps through meeting and

27  conferring further (the parties have met and conferred in person twice already), the

28  proposal should be rejected at this point.

LAI-2250073v2

1    On the other hand, Plaintiff is amenable to Experian's alternative, more

2    traditional proposed briefing schedule.

3    **Experian's further position**:

4    With respect to class certification, defendant Experian further proposes the

5    following approach to streamline the briefing process on the class certification

6    motion. Plaintiff would serve all affidavits that he intends to use in support of his

7    motion for class certification by June 22, 2007.[4]  Plaintiff would be required to

8    make these affiants available for deposition between June 27, 2007 and July 13,

9    2007. On July 20, 2007, defendant would serve plaintiff with all affidavits it

10   intends to use to oppose plaintiff's motion for class certification. Between July 25,

11   2007 and August 10, 2007, plaintiff would depose defendant's affiants. Plaintiff

12   would file his motion for class certification on August 17, 2007, Experian would

13   file its opposition to plaintiff's motion for class certification on September 19,

14   2007, and plaintiff would file his reply on October 19, 2007. If this approach is

15   unacceptable to the Court, then in the alternative, defendant Experian proposes the

16   following briefing schedule for class certification:  Plaintiff files his motion for

17   class certification on August 17, 2007, Experian files its opposition to plaintiff's

18   motion for class certification on October 5, 2007, and plaintiff files his reply on

19   November 16, 2007.

20   Experian currently anticipates the possibility of filing a motion for summary

21   judgment or adjudication of issues in advance of the ruling on plaintiff's class

22   certification motion.

23

24   _____

25   [4] As Experian advised plaintiff when discussing this section of the report,
     Experian is flexible with respect to this date and all of the other dates proposed in

26   this section. Experian proposed these dates by way of example only and, as
     Experian counsel advised plaintiff counsel, is willing to discuss selection of other

27   dates in advance of plaintiff's filing of his motion for class certification that are

28   agreeable to both parties.

3.   **Listing and proposed schedule of written discovery, depositions, and a proposed discovery cut-off date:**

The parties propose two phases for discovery in this case.

The first phase of discovery would occur prior to the hearing on plaintiff's motion for class certification, and would be focused (primarily but not exclusively) on class certification issues.  Specifically, the parties contemplate that the main focus of the first phase will be on discovery relevant to the propriety of class certification, but recognize that issues going to the merits are intertwined with certification issues and thus will also be the subject of the first phase of discovery. Plaintiff believes that discovery relating to potential damages should not be part of the first phase, but should take place after class certification is decided.  Experian does not agree that discovery relating to potential damages should be excluded from the first phase.

The second phase of discovery would occur after the Court's ruling on the class certification motion.

The parties believe that that the first phase of discovery should be completed by July 17, 2007.  As discussed in section 2 above, the parties agree that setting any dates other than the dates related to the class certification proceedings is premature until after the Court has decided whether to certify a class in this action, as that decision will affect the scope and nature of the necessary discovery.  Instead of setting a cut-off date for the second phase of discovery, the parties propose that, within thirty (30) days after the Court rules on the class certification motion, the parties should meet and confer and submit a jointly proposed further scheduling order, including a final discovery cut-off date, to govern the next stage of this lawsuit.

**Proposed discovery by Plaintiff**:  Plaintiff presently intends to propound its first set of requests for admissions, interrogatories and requests for production of documents within thirty (30) days of receiving Experian's initial disclosures, and to

1   commence depositions within approximately sixty (60) days after receiving

2   Experian's written discovery responses.  Plaintiff presently contemplates that the

3   subjects of his discovery in this case will include issues relating to the propriety of

4   class certification, the issues set forth in Item No. 1 above (some of which relate at

5   least partly to class certification), and the basis for any defenses and affirmative

6   defenses.  Because Plaintiff does not yet have sufficient information regarding

7   Experian's personnel structure and business operations, such as its record-keeping,

8   its electronic databases, and its credit reporting practices, among other things,

9   Plaintiff is unable to specifically identify the depositions he intends to take, other

10  than noting that it is likely that a number of corporate representative depositions

11  will be needed.  Plaintiff may also need to take the depositions of third parties,

12  including "source" entities that provide home equity line of credit information to

13  Experian.

14       **Proposed discovery by Defendant**:  Experian presently intends to propound

15  written discovery after receiving plaintiff's initial disclosures, and to commence

16  deposition discovery, including the deposition of plaintiff, after receiving plaintiff's

17  written discovery responses.

18       4.   **Proposed changes in the limitations on discovery:**

19       Plaintiff is unable to foresee all of the potential needs for discovery at this

20  time.  However, in light of the potential complexity of the case, Plaintiff proposes

21  that the usual limit of ten (10) depositions be increased to fifteen (15), and that the

22  usual limit of twenty-five (25) interrogatories be increased to fifty (50), subject to

23  further increase with Court approval.

24       Experian believes that during the first phase of discovery (the pre-

25  certification discovery period) the parties should commence discovery limited by

26  the usual guidelines set forth in the Federal Rules.  Experian is currently unaware of

27  any need to change the usual limitations on discovery during the first phase of

28  discovery.  Experian proposes that, in the event either side comes to believe it needs

LAI-2250073v2

- - 13 - -

1  to conduct additional discovery, the parties should meet and confer at that time to

2  attempt to reach agreement about the additional discovery.  To the extent that

3  parties can agree there is a legitimate need for additional discovery, the parties will

4  propose a stipulated change to normal limits for the Court's approval.  If no

5  agreement can be reached, the requesting party can bring a motion at that time for

6  permission to expand the limits.

7       5.   **Issues which any party believes may be determined by motion:**

8  **Plaintiff's Position:**  Plaintiff believes that a number of the issues in Item

9  No. 1 above can be determined by motion, including the merit of some if not all of

10  Experian's affirmative defenses, the propriety of class certification, and the

11  question whether the challenged information is inaccurate or misleading under

12  applicable legal standards.

13      **Defendant's Position.**  Experian currently anticipates the possibility of filing

14  motions, including a motion for summary judgment or adjudication of issues, with

15  respect to issues addressed in Section 1.

16       6.   **Likelihood of adding other parties:**

17      **Plaintiff's Position:**  Plaintiff is unaware of any additional defendants that

18  might be added, but reserves the right to substitute the true names of Doe

19  defendants in the event that discovery indicates doing so would be appropriate.  It is

20  possible that another named plaintiff will be added as an additional proposed class

21  representative.

22      **Defendant's Position:**  Experian is unaware of any additional parties that

23  might be added.

24       7.   **Likelihood of amended pleadings:**

25      **Plaintiff's Position.**  Plaintiff may amend his complaint to add additional

26  substantive allegations, and will do so in the event additional parties are added.

27      **Defendant's Position.**  Experian will be amending its answer to the

28  complaint.

8.    **Whether case should be treated as complex:**

The parties agree that the case should be treated as complex.  The parties further believe that in general the procedures set forth in the Manual for Complex Litigation provide an appropriate guide for the fair and efficient adjudication of these matters.

9.    **Settlement Efforts/Recommended Settlement Procedure:**

No settlement efforts have been made to date, as the parties believe such discussions are premature.  Plaintiff recommends private mediation as the preferred settlement procedure.

Experian agrees the parties should defer formal ADR proceedings until after the Court's ruling on class certification, and agrees that private mediation using a retired judicial officer or other private mediator is appropriate.

10.    **Whether trial will be by jury or the Court:**

Both parties have demanded a trial by jury.

11.    **Timing of required disclosures:**

(a)    **Initial Disclosures:**

Per Rule 26(a)(1), the parties have agreed they will exchange initial disclosures within fourteen days after the Scheduling Conference.

(b)    **Pre-trial Disclosures:**

For the reasons discussed above, the parties believe that setting a date for pre-trial disclosures would be premature, and suggest that the parties agree to discuss this issue and provide their views to the Court after class certification is decided.

Plaintiffs presently believe that the usual deadlines for pre-trial disclosures may need to be advanced in this case, so that disclosures and objections are provided earlier than normally required by rule.

1        (c)    **Expert disclosures**:

2        While the Court's Standing Order addresses this issue, the parties believe that

3    the timing of expert disclosures can most appropriately be addressed after the

4    Court's ruling on class certification.

5        12.    **Proposals regarding severance, bifurcation or other ordering of**

6            **proof:**

7        Plaintiff believes that damages questions should be bifurcated and

8    determined after *prima facie* liability determinations are made.

9        Experian does not agree that damages should be bifurcated from liability in

10    this case, and would oppose any motion by plaintiff to bifurcate the case in this

11    manner.

12        13.    **Estimated length of trial and proposed dates for final pretrial**

13            **conference and trial:**

14        (a)    **Trial length**:

15        Plaintiff presently believes that if class certification is granted and proof is by

16    means of representative evidence and other evidence appropriate for class actions,

17    the trial of this case would take from 15 to 30 days.  If class certification is not

18    granted, Plaintiff believes the trial will consume no more than 7-8 days.

19        Experian believes that if no class is certified, the trial would be completed in

20    approximately 3 to 5 days.  On the other hand, if a class is certified, any class action

21    trial would be extremely time-consuming and unwieldy because there would be a

22    need for separate mini-trials for each class member.  Indeed, Experian has the right

23    to litigate a host of individual, outcome-determinative issues for each class member,

24    including, but not limited to, causation and damages.  Although virtually impossible

25    to estimate at this preliminary juncture, Experian estimates that any class action

26    trial would be eight months or more.

27

28

(b)   **Proposed Dates**: The parties believe that it is premature to select final pretrial conference and trial dates, as the time needed for litigation will depend in large part on whether class certification is granted.

With that said, Plaintiff presently believes that a class action trial (assuming a class is certified) could not reasonably occur until at least 15 to 18 months after the ruling on class certification, particularly in light of the class notice and opt-out procedures that would have to be initially addressed after any order granting class certification, as well as the need for a post-certification phase of discovery and potential additional dispositive motions.

14.   **Any other issues affecting status or management of case:**

The parties agree that the management of the case will depend in large part on whether the Court grants class certification. *See* discussion in Item Nos. 2, 3, 11 and 13.

The parties also agree that a stipulated protective order governing the treatment of confidential documents and information produced in discovery is appropriate in this case, and should be entered by the Court. The parties are in the process of drafting a stipulation and protective order for submission to the Court.

15.   **Recommendations and agreements, if any, about the final scheduling order:**

As discussed above, the parties believe that any such recommendations and agreements are premature until after the Court's ruling on class certification.

16.   **Items listed in F.R.Civ.Proc. 16(c) which counsel believe should be discussed at the Scheduling Conference:**

The parties believe that such discussions are premature, and propose revisiting this issue after class certification is decided.

1

2    Dated:    July 3 2006    SPIRO MOSS BARNESS HARRISON
                              & BARGE LLP
3

4                                     By:
5                                          Ira Spiro
                                           Daniel I. Barness
6                                          J. Mark Moore

7                                     Attorneys for Plaintiffs

8    Dated:    July 3, 2006    JONES DAY

9

10                                    By:
                                           Daniel J. McLoon
11                                         Suzanne Cate Jones
                                           Lisa C. McCurdy
12
                                      Attorneys for Defendants
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1-2250073v1                         - - 18 - -

1

## PROOF OF SERVICE BY MAIL

2

I am a citizen of the United States and employed in Los Angeles County, California.  I am

3

over the age of eighteen years and not a party to the within-entitled action.  My business address

4

is 555 South Flower Street, Fiftieth Floor, Los Angeles, California  90071-2300.  I am readily

5

familiar with this firm's practice for collection and processing of correspondence for mailing with

6

the United States Postal Service.  On July 3, 2006, I placed with this firm at the above address for

7

deposit with the United States Postal Service a true and correct copy of the within document(s):

8

**JOINT RULE 26 (F) SCHEDULING CONFERENCE**

9

**REPORT**

10

in a sealed envelope, postage fully paid, addressed as follows:

11

Ira Spiro, Esq.
Daniel L. Barness, Esq.

12

J. Mark Moore, Esq.
Spiro Moss Barness Harrison & Barge LLP

13

11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064

14

Phone: (310) 235-2468

15

Fax: (310) 235-2456
Email: ispiro@smbhblaw.com

16

dbarness@smbhblaw.com
mmore@smbhblaw.com

17

18

19

Following ordinary business practices, the envelope was sealed and placed for collection

20

and mailing on this date, and would, in the ordinary course of business, be deposited with the

21

United States Postal Service on this date.

22

I declare under penalty of perjury under the laws of the State of California that the above

23

is true and correct.

24

Executed on July 3, 2006, at Los Angeles, California.

25

26

27

Irma L. Ramirez

28

LAI-2241885v1

"EXHIBIT 2"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

HONORABLE PERCY ANDERSON, JUDGE PRESIDING

LAURENCE STEARN, ET AL.,          )
                                  )
          PLAINTIFF,              )
                                  )
     VS.                          )  CASE NO. CV 06-2249 PA (SHX)
                                  )
EXPERIAN INFORMATION SOLUTIONS,   )
INC.                              )
                                  )
          DEFENDANT.              )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, JULY 17, 2006

10:30 A.M.



JENNIFER S. LEWIS, CSR #9476, RPR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
411 WEST FOURTH STREET
SANTA ANA, CALIFORNIA 92701

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE PLAINTIFF, LAURENCE STEARN, ET AL:

 3             SPIRO MOSS BARNESS HARRISON & BARGE LLP
               BY:  J. MARK MOORE
 4             11377 WEST OLYMPIC BOULEVARD
               FIFTH FLOOR
 5             LOS ANGELES, CALIFORNIA 90064-1683

 6

 7        FOR THE DEFENDANT, EXPERIAN INFORMATION SOLUTIONS, INC.

 8             JONES DAY
               BY:  SUZANNE C. JONES
 9             555 SOUTH FLOWER STREET
               FIFTIETH FLOOR
10             LOS ANGELES, CALIFORNIA 90071

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            LOS ANGELES, CALIFORNIA; MONDAY, JULY 17, 2006
 2            THE CLERK:  CALLING MATTER NUMBER 3, CASE NUMBER
 3   CV 06-2249, LAURENCE STEARN, ET AL. VERSUS EXPERIAN
 4   INFORMATION SOLUTIONS.
 5            MS. JONES:  GOOD MORNING, YOUR HONOR.  SUZANNE JONES
 6   ON BEHALF OF DEFENDANT EXPERIAN INFORMATION SYSTEMS.
 7            MR. MOORE:  GOOD MORNING, YOUR HONOR.  MARK MOORE ON
 8   BEHALF OF PLAINTIFF LAURENCE STEARN.
 9            THE COURT:  OKAY.  WHAT'S THIS CASE ABOUT?
10            MR. MOORE:  WELL, YOUR HONOR, IT'S A PRETTY SIMPLE
11   CASE IN TERMS OF ITS DESCRIPTION.  OUR CLIENT --
12            THE COURT:  PRETTY SIMPLE, PERIOD.
13            MR. MOORE:  OUR CLIENT RECEIVED A CONSUMER REPORT
14   PREPARED BY EXPERIAN, WHICH HE CONTENDS VIOLATES THE FAIR
15   CREDIT REPORTING ACT BECAUSE IT IMPROPERLY CLASSIFIES HIS HOME
16   EQUITY LINE OF CREDIT AS UNSECURED REVOLVING DEBT.  AND WE
17   BELIEVE, BASED ON OUR LIMITED INVESTIGATION SO FAR, THAT, IN
18   FACT, THAT IS EXPERIAN'S PRACTICE.
19            THE COURT:  YOU'RE GOING TO TRY THIS CASE?
20            MR. MOORE:  I'M GOING TO BE ONE OF THE TRIAL LAWYERS,
21   YES.
22            THE COURT:  WELL, WHO IS GOING TO BE THE LEAD TRIAL
23   LAWYER?
24            MR. MOORE:  I WOULD EXPECT THE LEAD TRIAL LAWYER
25   WOULD BE MR. SPIRO.
```

1          THE COURT:  WHERE IS HE?

2          MR. MOORE:  MR. SPIRO IS AT A DEPOSITION IN TEXAS

3  TODAY IN ANOTHER CLASS ACTION.

4          THE COURT:  DID YOU GET A COPY OF MY STANDING ORDER?

5          MR. MOORE:  I DID, YOUR HONOR.

6          THE COURT:  WELL, WHAT DOES IT SAY ABOUT LEAD COUNSEL

7  BEING PRESENT?

8          MR. MOORE:  I NOTICED THAT, YOUR HONOR.  I BELIEVE IT

9  DID SAY LEAD COUNSEL IS SUPPOSED TO BE PRESENT.  IN FACT, MY

10 COLLEAGUE, MR. BARNESS, WAS SUPPOSED TO BE HERE TOO AND I

11 HAVEN'T SEEN HIM YET.

12         THE COURT:  OH, OKAY.  ALL RIGHT.

13 AND YOU'RE GOING TO TRY THE CASE ON BEHALF OF THE DEFENDANT?

14         MS. JONES:  YES, YOUR HONOR.  I AM THE ATTORNEY

15 PRIMARILY RESPONSIBLE FOR THIS CASE, ALTHOUGH --

16         THE COURT:  WHO'S THE LEAD LAWYER?

17         MS. JONES:  I AM THE LEAD, BUT I WOULD SAY

18 MR. MC CLUNE, DAN MC CLUNE, WILL ALSO BE TRYING THE CASE WITH

19 ME.

20         THE COURT:  MR. MC CLUNE?

21         MS. JONES:  YES.

22         THE COURT:  WHERE IS HE?  HE IS IN TEXAS TOO?

23         MS. JONES:  NO.  HE JUST -- HE WASN'T AVAILABLE

24 TODAY.

25         THE COURT:  WHERE IS HE?

1        MS. JONES:  ON ANOTHER MATTER.  I DON'T HAVE THE

2   SPECIFICS FOR YOUR HONOR.

3        THE COURT:  OH, OKAY.  WELL, ALL RIGHT.

4        WELL, YOU TELL MR. SPIRO AND MR. MC CLUNE THAT I MEAN

5   WHAT I SAY.  I WANT THE LEAD LAWYERS HERE.  OKAY?  THEY ARE

6   NOT --

7        MS. JONES:  I WOULD SAY I'M THE LEAD LAWYER.

8        THE COURT:  PLEASE.  LET'S NOT PLAY GAMES.

9        IS THIS YOUR CLIENT?

10       MS. JONES:  YES.

11       THE COURT:  OH, OKAY.  AND YOU'RE A PARTNER AT THE

12   FIRM?

13       MS. JONES:  YES, I AM, YOUR HONOR.

14       THE COURT:  OH, OKAY.  WELL, THEN WHAT DO WE NEED

15   MR. MC CLUNE FOR?

16       MS. JONES:  WELL, HE HAS A LONG HISTORY OF WORKING ON

17   THESE CASES AND SO HE WOULD BE INVOLVED, AS WELL, AS A

18   RESOURCE.

19       THE COURT:  OKAY.  WELL, IF YOU'RE THE LEAD LAWYER,

20   THEN WE DON'T -- I DON'T KNOW WHY I NEED HIM HERE, DESPITE HIS

21   EXPERIENCE WITH THESE CASES.  BUT MAYBE HE'LL HAVE SOMETHING

22   TO OFFER.  WE'LL FIND OUT.

23       OKAY.  LET ME TALK TO THE PLAINTIFFS.  I THINK YOU

24   HAD INDICATED THAT YOUR FIRM HAS A LOT OF EXPERIENCE IN THESE

25   CASES IN CLASS ACTIONS.

1        MR. MOORE:  WE DO, YOUR HONOR.

2        THE COURT:  OH, OKAY.  FILED IN BOTH STATE AND

3 FEDERAL COURT?

4        MR. MOORE:  YES, YOUR HONOR.  AND I PERSONALLY HAVE

5 HANDLED MANY CLASS ACTIONS AS A DEFENSE LAWYER TOO.  I WAS A

6 PARTNER AT BARKER & WOLEN FOR A WHILE.

7        THE COURT:  OH, OKAY.  WELL, HOW ABOUT BEING AS A

8 PLAINTIFF IN CLASS ACTION CASES?

9        MR. MOORE:  PERSONALLY, NO.  THE FIRM HAS REPRESENTED

10 MANY PLAINTIFFS IN CLASS ACTIONS.

11        THE COURT:  MANY PLAINTIFFS?

12        MR. MOORE:  YES.  I WOULD SAY MAYBE 100 CASES.

13        THE COURT:  OKAY.  HOW MANY IN THIS DISTRICT?

14        MR. MOORE:  I WOULD BE VENTURING A GUESS.  OVER A

15 DOZEN.

16        THE COURT:  OKAY.

17        MR. MOORE:  I'VE GOT A CASE RIGHT NOW BEFORE JUDGE

18 FEESS, BUT THAT'S THE ONLY CASE THAT I HAVE AND IT'S JUST

19 STARTED.

20        THE COURT:  OKAY.  AND I TAKE IT THAT MR. SPIRO AND

21 MEMBERS OF YOUR FIRM ARE THOROUGHLY FAMILIAR WITH THE FEDERAL

22 RULES OF CIVIL PROCEDURE?

23        MR. MOORE:  I WOULD ASSUME SO, YOUR HONOR.  I

24 COULD --

25        THE COURT:  YOU WOULD ASSUME SO?

1        MR. MOORE:  WELL, I CAN'T SPEAK FOR EVERYBODY --

2   PEOPLE OTHER THAN MYSELF.

3        THE COURT:  HOW ABOUT YOU?

4        MR. MOORE:  I BELIEVE I'M FAIRLY FAMILIAR, YES.

5        THE COURT:  FAIRLY FAMILIAR WITH THE LOCAL RULES OF

6   PRACTICE IN THIS COURT?

7        MR. MOORE:  WELL, I WASN'T FAMILIAR ENOUGH TO KNOW

8   THAT I COULDN'T BRING MY CELL PHONE WITH A CAMERA THIS

9   MORNING, BUT --

10        THE COURT:  WELL, OTHER THAN THAT LITTLE DETAIL,

11   YOU'RE THOROUGHLY FAMILIAR WITH THE LOCAL RULES?

12        MR. MOORE:  I WOULD HOPE SO, YOUR HONOR.

13        THE COURT:  OKAY.

14        MR. MOORE:  AND IF I'M NOT, I'LL CERTAINLY BECOME

15   FAMILIAR.

16        THE COURT:  WELL, I SUSPECT YOU MIGHT.

17        OKAY.  ARE YOU FAMILIAR WITH LOCAL RULE 23-3?

18        MR. MOORE:  NOT ENOUGH THAT I COULD RECITE IT TO YOU.

19   IF YOU COULD TELL ME WHICH PROVISION THAT IS, RULE 23, I MIGHT

20   BE ABLE TO BE MORE RESPONSIVE.

21        THE COURT:  YOU MIGHT WANT TO TAKE A LOOK AT IT.

22        MR. MOORE:  OKAY.

23        THE COURT:  AND TELL MR. SPIRO THAT HE OUGHT TO TAKE

24   A LOOK AT IT.  BECAUSE IT PROVIDES THAT WITHIN 90 DAYS OF

25   SERVICE OF A PLEADING PURPORTING TO COMMENCE A CLASS ACTION,

1  THAT THE PROPONENT OF THE CLASS SHOULD FILE A MOTION FOR

2  CERTIFICATION.

3        I TAKE IT NO MOTION FOR CERTIFICATION HAS BEEN FILED

4  IN THIS CASE.

5        MR. MOORE:  NO, YOUR HONOR, NO MOTION HAS BEEN FILED.

6        THE COURT:  OKAY.  WELL, YOUR CLASS ACTION

7  ALLEGATIONS ARE STRICKEN.  THIS IS NO LONGER A CLASS ACTION

8  FOR FAILING TO FOLLOW THE LOCAL RULES.

9        NOW --

10        MR. MOORE:  WOULD THERE BE ANY WAY TO REMEDY THAT,

11  YOUR HONOR?

12        THE COURT:  I DON'T PRACTICE LAW ANYMORE, COUNSEL.

13  AND GIVEN THE TREMENDOUS AND EXTENSIVE EXPERIENCE THAT YOUR

14  FIRM HAS HAD, I'M SURE THAT YOU'LL BE ABLE TO FIGURE THAT OUT.

15        NOW, LET ME ASK YOU THIS:  WHAT ARE YOUR -- WHAT ARE

16  MR. STEARN'S DAMAGES?

17        MR. MOORE:  WELL, MR. STEARN'S DAMAGES ARE AT LEAST

18  EMOTIONAL DISTRESS AND DECREASE IN HIS CREDIT RATING.

19        THE COURT:  EMOTIONAL DISTRESS.

20        MR. MOORE:  RIGHT, YOUR HONOR.

21        THE COURT:  HAS HE GOT ANY HARD MEDICALS?

22        MR. MOORE:  NO, YOUR HONOR.

23        THE COURT:  OKAY.

24        MR. MOORE:  MY UNDERSTANDING IS THAT IN THE 9TH

25  CIRCUIT, HARD MEDICAL EVIDENCE IS NOT REQUIRED UNDER FAIR

1    CREDIT REPORTING ACTION CASES.

2            AND IF I MAY, YOUR HONOR, MR. STEARN IS REQUESTING

3    STATUTORY DAMAGES, AND IT'S PRETTY CLEAR UNDER RECENT CASE LAW

4    THAT IN CLASS ACTIONS --

5            THE COURT:  WE ARE NOT DEALING WITH A CLASS ACTION.

6            MR. MOORE:  YOU'RE RIGHT, YOUR HONOR.

7            THE COURT:  SO WHAT ARE THE STATUTORY DAMAGES?

8            MR. MOORE:  WELL, STATUTORY DAMAGES ARE 100 TO $1,000

9    UNDER SECTION 1681E, I BELIEVE IT IS, OF THE FAIR CREDIT

10   REPORTING ACT.

11           THE COURT:  AND HE IS CLAIMING STATUTORY DAMAGES?

12           MR. MOORE:  YES, YOUR HONOR.  HE WAS CLAIMING

13   STATUTORY DAMAGES AS WELL AS PUNITIVE DAMAGES.

14           HOWEVER, GIVEN YOUR HONOR'S RULING ABOUT THE CLASS

15   ALLEGATIONS, MR. STEARN MIGHT HAVE SECOND THOUGHTS ABOUT

16   PURSUING A CASE WHERE HIS DAMAGES MIGHT BE LIMITED TO THAT

17   DEGREE.  I DON'T KNOW.  I'D HAVE TO TALK TO THE CLIENT.

18           THE COURT:  OKAY.

19           MR. MOORE:  BUT JUST TO CLARIFY, YOUR HONOR, YOUR

20   RULING THAT CLASS ALLEGATIONS ARE STRICKEN, WAS THAT A RULING

21   THAT THEY ARE STRICKEN WITH PREJUDICE?

22           THE COURT:  SIR, THEY ARE STRICKEN BECAUSE OF THE

23   FAILURE TO COMPLY WITH THE LOCAL RULE, WHICH I ASSUME THAT ANY

24   COMPETENT COUNSEL WHO IS FAMILIAR WITH CLASS ACTIONS WOULD

25   HAVE BEEN AWARE, WELL AWARE.

1    SO MAYBE YOU SHOULD TALK ABOUT WHETHER THIS CASE IS

2  GOING TO PROCEED.  BUT IN CASE IT IS, LET ME GIVE YOU YOUR

3  TRIAL DATES.

4    MS. JONES:  THANK YOU.

5    THE COURT:  FEBRUARY 20TH, 2007 AT 9 O'CLOCK.  I'LL

6  HEAR MOTIONS IN LIMINE AND ANY DISPUTES YOU HAVE ABOUT JURY

7  INSTRUCTIONS.

8    IS THERE GOING TO BE A JURY TRIAL?

9    MS. JONES:  YES, YOUR HONOR.

10    THE COURT:  OKAY.  FEBRUARY THE 12TH, 1:30.

11    FINAL PRETRIAL CONFERENCE WILL BE JANUARY THE 19TH AT

12  1:30.  YOU SHOULD FILE YOUR MOTIONS IN LIMINE AT THAT TIME

13  ALONG WITH ANY QUESTIONS YOU WANT ME TO ASK THE JURY, AS WELL

14  AS AN AGREED-TO STATEMENT OF THE CASE.

15    YOU SHOULD LODGE A PROPOSED PRETRIAL CONFERENCE ORDER

16  ON JANUARY 5TH ALONG WITH YOUR CONTENTIONS OF FACT IN LAW,

17  YOUR EXHIBIT AND WITNESS LIST, A STATUS REPORT REGARDING

18  SETTLEMENT, AN AGREED-UPON SET OF JURY INSTRUCTIONS AND

19  VERDICT FORMS, AND A JOINT STATEMENT REGARDING ANY DISPUTED

20  INSTRUCTIONS AND ANY DISPUTES YOU HAVE ABOUT VERDICT FORMS.

21    THE LAST DATE TO CONDUCT A SETTLEMENT CONFERENCE IN

22  THIS CASE IS DECEMBER 26TH.  THE LAST DAY TO HEAR MOTIONS,

23  DECEMBER THE 18TH.  THE DISCOVERY CUTOFF IS DECEMBER THE 11TH.

24    ANY NEED TO ADD ANY ADDITIONAL PARTIES?

25    MS. JONES:  DEFENDANT IS UNAWARE OF ANY.

1         THE COURT:  OKAY.

2         MR. MOORE:  WE HAD ANTICIPATED ADDING AN ADDITIONAL

3 REPRESENTATIVE PLAINTIFF, AS THAT'S OUR CUSTOM IN CLASS ACTION

4 CASES.

5         THE COURT:  I GUESS WE DON'T HAVE TO WORRY ABOUT

6 THAT.

7         SO THE PLEADINGS ARE CLOSED.

8         MS. JONES:  YOUR HONOR, MAY I RAISE ONE OTHER POINT

9 WITH -- I DON'T KNOW HOW RELEVANT THIS IS AT THIS POINT, BUT

10 THIS CASE HAS BEEN ASSIGNED TO MAGISTRATE HILLMAN.  AND

11 PLAINTIFF COUNSEL WAS PROFESSIONAL ENOUGH TO ADVISE US AT THE

12 OUTSET THAT IRA SPIRO, THE GENTLEMAN WE'VE REFERRED TO

13 EARLIER, PLAINTIFF'S COUNSEL, IS A LONG-TIME CLOSE FRIEND OF

14 MAGISTRATE HILLMAN.  WE'RE NOT EVEN SURE IF MAGISTRATE HILLMAN

15 IS AWARE YET OF THIS ISSUE, BUT WE WANTED TO BRING IT TO THE

16 COURT'S ATTENTION AS WELL, IN CASE THE COURT HAS SOME ADVICE

17 OR SUGGESTIONS AS TO HOW WE SHOULD PROCEED.

18         THE COURT:  WELL, WHAT SETTLEMENT PROCEDURE DO THE

19 PARTIES WISH TO UTILIZE IN THIS CASE?

20         MS. JONES:  I THINK THE PARTIES HAVE AGREED ON A

21 PRIVATE JUDGE.

22         THE COURT:  OKAY.  HAVE YOU AGREED UPON SOMEBODY?

23         MS. JONES:  NO, JUST SELECTED THE PROCEDURE.

24         AT THE TIME, IT WAS EXPECTED TO BE A CLASS.  THE

25 PLEADING HAD PLED A CLASS -- A CLASS ACTION.  AND SO THE

1   PARTIES AGREED IT WAS PREMATURE UNTIL THE COURT HAD RULED ON

2   THE CLASS CERTIFICATION MOTION TO HAVE FORMAL DISCOVERY

3   PROCEEDINGS -- I MEAN FORMAL SETTLEMENT PROCEEDINGS.  EXCUSE

4   ME.

5            THE COURT:  OH, WELL, I GUESS YOU CAN NOW START

6   HAVING THEM.

7            MS. JONES:  THAT'S CORRECT.

8            THE COURT:  SO YOU HAVE TEN DAYS TO PICK A PRIVATE

9   MEDIATOR.  IF YOU CAN'T AGREE WITHIN THAT TEN-DAY PERIOD, EACH

10  SIDE SHOULD SUBMIT A NAME AND I'LL PICK ONE AND I'LL RESOLVE

11  IT.

12           AS TO MAGISTRATE HILLMAN, I'M SURE IF MAGISTRATE

13  HILLMAN FEELS THAT FOR SOME REASON HE THINKS HE OUGHT TO

14  RECUSE HIMSELF BECAUSE OF MR. SPIRO'S INVOLVEMENT IN THIS

15  CASE, HE'LL LET YOU KNOW.

16           MS. JONES:  GREAT.

17           IS THERE A RECOMMENDED -- DOES THE COURT HAVE A

18  RECOMMENDATION WITH RESPECT TO HOW TO BRING IT TO HIS

19  ATTENTION EARLIER, BEFORE THE PROCEEDINGS PROGRESS?

20           THE COURT:  I'M SURE HE'LL LOOK -- I'M SURE IF YOU

21  HAVE A DISCOVERY MATTER, HE'LL LOOK AT THE PLEADINGS AND

22  FIGURE IT OUT, IF MR. SPIRO EVER MAKES IT BACK FROM TEXAS.

23           MS. JONES:  THANK YOU.

24           THE COURT:  SOMEHOW, THOUGH, I THINK HE'LL PROBABLY

25  GET A CALL THIS MORNING, THOUGH.  PRETTY SOON.

1    MS. JONES:  THANK YOU, YOUR HONOR.

2    THE COURT:  I'M SURE HIS EARS ARE BURNING AS WE

3  SPEAK.  AND MAYBE THE NEXT TIME HE HAS A CASE IN FRONT OF ME,

4  HE'LL FEEL LIKE SHOWING UP.

5    OKAY.  ANYTHING ELSE?

6    MR. MOORE:  DON'T BELIEVE SO, YOUR HONOR.

7    MS. JONES:  THANK YOU, YOUR HONOR.

8    THE COURT:  OKAY.  THANK YOU VERY MUCH.

9    MR. MOORE:  THANK YOU.

10    (PROCEEDINGS CONCLUDED.)

11

12    I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

13  TRANSCRIPT FROM THE STENOGRAPHIC RECORD OF PROCEEDINGS IN THE

14  FOREGOING MATTER.

15

16

17    _____        7-30-06

18    JENNIFER S. LEWIS, CSR, RPR              DATE

19

20

21

22

23

24

25